NOT DESIGNATED FOR PUBLICATION

No. 123,843

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN PAUL KENT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Allen District Court; DANIEL D. CREITZ, judge. Opinion filed November 4, 2022. Reversed and remanded with directions.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Jerry B. Hathaway*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HURST, P.J., HILL and ATCHESON, JJ.

PER CURIAM:  This case appears before this court for the second time. Almost four years ago, the district court sentenced John Paul Kent to 18 months' probation with an underlying 30-month prison sentence. After Kent stipulated to multiple probation violations, the district court revoked his probation, and about two years later Kent untimely appealed that revocation. After docketing his appeal, a panel of this court ordered the case to be sent back to the district court for a hearing to determine whether a jurisdictional exception applied to allow Kent's untimely appeal. However, without

1

determining the jurisdiction issue, the district court instead dismissed the case as moot. This court retained the appeal and instructed the parties to brief the issues of mootness, jurisdiction, and the substantive arguments related to Kent's probation revocation. But once again, this court is without jurisdiction to decide the substantive issue. The district court's decision is reversed and remanded with directions.

PROCEDURAL AND FACTUAL BACKGROUND

Kent entered a plea agreement with the State related to events that occurred on February 1, 2018, where the State agreed to dismiss several charges against Kent in exchange for Kent's no-contest plea to felony distribution of methamphetamine. After a hearing, the district court accepted Kent's no-contest plea and sentenced him to 18 months' probation with an underlying 30-month prison sentence.

In May 2019, the State moved to revoke Kent's probation, alleging he failed to:

- report to his intensive supervision officer (ISO);
- seek and maintain employment;
- submit to drug and alcohol testing;
- cooperate with his ISO to create a drug treatment or psychiatric treatment plan;
- successfully complete his drug court program;,
- pay his community corrections administrative fee; and
- pay his court-ordered obligations.

Kent waived his right to a hearing on the State's motion to revoke and stipulated that he violated the terms and conditions of his probation. The district court accepted Kent's waiver and stipulation and then stated that "[Kent's] probation is revoked."

The district court then asked the parties if there was an agreement on the disposition, and the State responded:

> "Judge, we're—he's—I think the agreement is he's—he's agreeing to go and serve his sentence. What he's asking for is to be granted a week to—be ordered to serve—to report at 11 a.m.—be let out today, be ordered to report at 11 a.m. on the 29th of July, which is a week from today."

Kent's counsel agreed—stating that Kent was requesting to delay reporting to serve his sentence by one week to allow him to wrap up personal affairs. The State did not oppose the requested week delay, in part because Kent had another outstanding felony case that it intended to pursue if he did not surrender himself in the present case. The district court agreed to allow Kent a week delay: "[T]he Court orders that [Kent] appear at the Allen County Sheriff's Office by or before 11 a.m. central standard time on July 29th, 2019."

Notably, the district court did not provide any specific reasons for revoking Kent's probation beyond accepting Kent's stipulation to the violations alleged in the State's motion. The court also did not advise Kent of his right to appeal the revocation at the hearing. Kent did not report to serve his sentence on July 29, 2019, but was later arrested on November 18, 2019, and taken into custody.

On February 18, 2020, Kent filed a "Motion to Withdraw Stipulation to Probation Revocation"—seeking to withdraw his stipulation because he "did not fully and completely understand the stipulation" and that the stipulation "was not freely and voluntarily entered." Kent argued that he had not been told about the possibility of intermediate sanctions instead of probation revocation and that his counsel failed to provide him with legal information and resources about his case. Kent sought withdrawal of his stipulation and argued that intermediate sanctions were the appropriate remedy in his case.

3

In its response, the State argued that the district court did not have jurisdiction to hear Kent's motion because it had already imposed his sentence. The district court held a hearing on Kent's motion, where it found that it lacked jurisdiction to grant his motion to withdraw or to revisit the probation violation hearing. On July 8, 2020, Kent filed his first notice of appeal—challenging the district court's denial of his motion for lack of jurisdiction and his initial probation revocation.

This court docketed Kent's appeal on April 8, 2021, and then ordered the parties to show cause why the case should not be dismissed for lack of jurisdiction given Kent's late notice of appeal from his probation revocation. After receiving the parties' show cause briefings, this court sent the case back to the district court for a hearing to determine "whether case law exceptions to the requirement of a timely filed notice of appeal apply." See *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982).

The district court held a hearing on September 13, 2021, in response to this court's order, but Kent did not appear. Rather than conducting a jurisdiction hearing as directed, the district court found that Kent had served his entire sentence and thus his case was now moot. The district court stated, "I don't think we have to deal with an *Ortiz* exception," because it found the appeal moot. The State agreed; Kent's counsel objected, arguing:

> "No, I would think that we got remanded here from the Court of Appeals relative to make a determination on the *Ortiz* exception, that that was what we were charged with doing; and so I would have to formally object to the Court finding that there is no *Ortiz* exception based upon mootness."

The court responded, stating:

> "I've never dealt with this before, but I—he's already served his sentence, and so I think the issue is moot there.

"And, in addition, we can't locate him and he has a right to be here, and I don't know what else I can do. I think really even the remand from the Court of Appeals is now moot. I mean, their order is still in place, but there's nothing for the Court to take any action on; and, arguably, the Court doesn't even have jurisdiction.

. . . .

"But the bottom line is we probably need to submit an order saying that he—we tried to obtain service on him—we failed despite our best efforts—at the best address we had available for him; he has served his sentence; and the case is now moot."

The district court ended the hearing without deciding the jurisdiction question pursuant to *Ortiz*. This court retained Kent's appeal but ordered the parties to brief both the substantive arguments and the questions of appellate jurisdiction and mootness.

## DISCUSSION

On appeal, Kent argues that the district court erred twice—first, by finding his appeal moot and second, when it initially revoked his probation without first imposing intermediate sanctions. However, before determining the substantive claim of erroneous probation revocation, this court must first address the district court's dismissal of Kent's claim as moot and whether it has jurisdiction to address the substantive issue.

### I. THE STATE FAILED TO SHOW THE CASE IS MOOT

The State argues that, regardless of any other arguments, this court should dismiss Kent's appeal as moot. Kent argues that his appeal is not moot because he is on postrelease supervision and the controversy is still active, and that the State failed to provide any evidence of Kent's sentence completion below or on appeal and thus has not carried its burden to prove mootness.

5

Kansas appellate courts do not generally decide moot questions or render advisory opinions. When determining questions of mootness, appellate courts exercise unlimited review. *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020). As the party seeking dismissal based on mootness, the State "generally bears the initial burden of establishing that a case is moot in the first instance." 311 Kan. at 593. The Kansas Supreme Court has rejected a "bright line" test for mootness. An appeal should be dismissed for mootness only if "'it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights.' [Citation omitted.]" 311 Kan. at 592.

In an appeal solely challenging a sentence—like Kent's—the party asserting mootness can establish a prima facie showing of mootness by demonstrating that the defendant has fully completed the terms and conditions of their sentence. If the State makes this showing, the burden shifts to the defendant to show that dismissal would impair a substantial interest or that an exception to the mootness doctrine applies. *Roat*, 311 Kan. 593.

The State's brief claims that Kent has "served his underlying prison sentence" and that "neither party contests" this fact. For support of this assertion, the State cites to one page of Kent's appellate brief that discusses Kent's potential release date and potential postrelease timeline. However, Kent's brief does not concede that he had completed his underlying sentence. Rather, the preceding page of Kent's appellate brief notes that the State has the burden to make "a prima facie showing that a person has fully completed the terms and conditions of [their] sentence" and "[t]hat did not happen in this case." Kent's brief goes on to say:

> "The State did not allege or prove the case was moot, or that Mr. Kent has even completed his sentence in this case, and there was no evidence of that fact. Mr. Kent

6

asserts that the question of mootness fails in the first instance because there has been no proof that the case is moot.

> "In the interest of complying with this Court's order to brief [the mootness issue], however, counsel for Mr. Kent will address the question in full. He maintains that he has not completed the terms and conditions of his sentence."

Thus, contrary to the State's contention, this court finds nothing in the record establishing Kent has admitted or agreed that he has served his underlying sentence.

At the status hearing on this court's order—where the district court found the case was moot—the State presented no evidence of Kent's sentence completion. At the beginning of the hearing, Kent's district court counsel informed the court—without any accompanying evidence—that he could not locate Kent and that Kent "ha[d] completely exhausted his sentence in this case." The district court then found that Kent "ha[d] served his sentence" and the case was now moot.

On appeal, this court asked the parties to brief the mootness issue. But just as at the hearing below, the State's brief provides no evidence of Kent's sentence completion. The State cites only to Kent's single appellate brief page to support its argument that Kent served his entire underlying sentence. Yet, the Kansas Supreme Court has held that a party must provide a reliable factual source showing the defendant's custodial change for sufficient proof of sentence completion. See *State v. Yazell*, 311 Kan. 625, 631, 465 P.3d 1147 (2020). The State has cited to no factual support in the record and has provided no notice of change in custodial status filed pursuant to Supreme Court Rule 2.042 (2022 Kan. S. Ct. R. at 18) or any other documentation confirming Kent's sentence completion.

As the State has the burden to show Kent fully completed the terms and conditions of his sentence—and it produced no reliable evidence that occurred—this court cannot find that Kent's appeal is moot. See *State v. Foster*, No. 123,019, 2021 WL 6068998, at *5 (Kan. App. 2021) (unpublished opinion) ("Because the State produced no reliable

7

evidence that Foster's claims are moot, our only remaining choice is to reach the merits of Foster's claims even if this requires us to issue an advisory opinion."). The district court erred in finding Kent's appeal was moot.

II.     THIS COURT LACKS JURISDICTION TO ADDRESS KENT'S SUBSTANTIVE CLAIMS

Before addressing Kent's substantive claims, this court must first determine whether it has jurisdiction to hear Kent's untimely appeal. As discussed above, a panel of this court sent Kent's appeal back to the district court for an *Ortiz* hearing to determine whether an exception applied to Kent's untimely revocation appeal. Rather than conduct an *Ortiz* analysis, the district court dismissed the case as moot.

Now, Kent asserts essentially that this court is in the same position as the previous panel and must remand the case for an evidentiary hearing on the jurisdiction question because the parties were unable to fully present their jurisdiction arguments to the district court. He argues in the alternative that if this court "desires to act in the interest of judicial economy," it could assume an *Ortiz* exception applies and reach the merits of his argument on appeal. The State agrees with Kent in the first instance—asserting that this court has no jurisdiction to hear the merits and no *Ortiz* exception has been found to apply, so this court should remand with instructions to conduct an *Ortiz* analysis below.

Whether jurisdiction exists is a question of law over which appellate courts exercise unlimited review. *State v. Lundberg*, 310 Kan. 165, 170, 445 P.3d 1113 (2019). This court has jurisdiction only when an appeal is timely filed or when one of the three *Ortiz* exceptions is found by the district court. See *State v. Smith*, 304 Kan. 916, 919-20, 377 P.3d 414 (2016). Neither has occurred in this case. And "[w]hen the record discloses a lack of jurisdiction, an appellate court must dismiss the appeal." *State v. Marinelli*, 307 Kan. 768, 769, 415 P.3d 405 (2018). As Kent's appeal was untimely filed and no *Ortiz*

8

exception was found below, this court lacks jurisdiction to hear the merits of Kent's appeal.

Even assuming one exists, this court declines to search for an avenue under which it could assume it has jurisdiction permitting it to reach Kent's substantive claims.

CONCLUSION

Having found that the State has failed to provide sufficient evidence to support its claim that Kent's appeal is moot, and that this court lacks jurisdiction to hear Kent's substantive arguments on appeal, this court must reverse the district court's dismissal and remand this case to the district court. On remand, the district court must either conduct an *Ortiz* hearing as previously directed to determine whether a jurisdictional exception applies to excuse Kent's untimely appeal or determine the issue is moot based on reliable evidence.

Reversed and remanded with directions consistent with this opinion.